1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

11

12 GUILLERMO NAVA, On Behalf Of
Himself And All Others
13 Similarly Situated,

No. 2:08-CV-00069-FCD-KJM

Plaintiff,

14

15 v.

MEMORANDUM AND ORDER

16 VIRTUALBANK, LYDIAN TRUST
COMPANY, LYDIAN PRIVATE BANK,
17 AND DOES 1-10,

18 Defendants.
_____/

19

20 ----oo0oo----

21    This matter is before the court on defendants' VirtualBank,

22 Lydian Trust Company and Lydian Private Bank's ("defendants")

23 partial motion to dismiss the complaint of plaintiff Guillermo

24 Nava ("plaintiff") for failure to state a claim upon which relief

25 can be granted, pursuant to Federal Rule of Civil Procedure

26 12(b)(6).  After considering the memoranda filed by the parties,

27

28

1

and for the reasons stated herein,[1] defendants' partial motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

On October 25, 2006, plaintiff entered into a loan agreement with defendants to refinance his existing home loan. (Pl.'s Compl., filed January 11, 2008, ¶ 5.)  The type of loan defendants sold to plaintiff is known as an adjustable-rate mortgage.[2]  (Id.)  The terms of the agreement are set forth in a document titled "MTA CHOICE ADJUSTABLE RATE NOTE" ("the Note"). (Id. at Ex. 1.)

The Note provided that the initial interest rate on the loan would be 1.5 percent.  (Id. at Ex. 1.)  The Note further provided that, beginning on December 1, 2006, this rate "may" change each month at a calculated rate.  (Id.)  Actual monthly payments, however, would change on a yearly basis, with the first increase to take place no sooner than December 1, 2007.  (Id.)  The terms of the loan also included a prepayment penalty.  (Id. ¶ 25.)

Attached to the Note was a disclosure statement that included a payment schedule purporting to set forth the exact monthly payment obligations that would be necessary to pay off all principal and interest during the term of the loan.  (Id. ¶ 121.)  The payment schedule indicated that the monthly payments during the first three to five years, which were based on the 1.5

---

[1]    Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L.R. 78-230(h).

[2]    "A mortgage in which the lender can periodically adjust the mortgage's interest rate in accordance with fluctuations in some external market index." Black's Law Dictonary (8th ed. 2004).

percent "teaser" rate, were to remain the same. (Id. ¶ 20.)
The disclosure statement also provided that "the loan contains a
variable-rate feature." (Id.)

Although the Note states that the initial teaser interest
rate "may" increase beginning on December 1, 2006, plaintiff
alleges that defendants "immediately and significantly" increased
the teaser rate. (Id. ¶ 20.) Plaintiff also alleges that if a
borrower adheres to the payment schedule in the disclosure
statement after the teaser rate is increased, the loan will
result in negative amortization[3] and loss of equity since the
monthly payments would be less than the amount of interest that
had accrued on the borrowed amount. (Id.)

Plaintiff alleges that he did not receive the benefit of the
loan rate he was initially promised and will not be able to
secure a new loan for up to three years because of the prepayment
penalty. (Id. ¶¶ 20, 25.) Accordingly, on January 11, 2008,
plaintiff brought this action against defendants and asserted
claims for 1) violation of Truth in Lending Laws ("TILA"), 15
U.S.C. § 1601, et seq; 2) violation of California's Unfair
Competition Laws, California Business and Professions Code §
17200, et seq ("UCL"), predicated on violations of TILA; 3)
violation of the UCL based on unfair or fraudulent business acts
or practices; 4) fraudulent omission; 5) breach of contract; 6)
breach of implied covenant of good faith and fair dealing; and 7)
/////

---

[3]   "An increase in a loan's principal balance caused by
monthly payments insufficient to pay accruing interest." Black's
Law Dictionary (8th ed. 2004).

violation of the UCL predicated on violations of California

Financial Code § 22302.

### STANDARD

On a motion to dismiss, the allegations of the complaint

must be accepted as true.  Cruz v. Beto, 405 U.S. 319, 322

(1972).  The court is bound to give plaintiff the benefit of

every reasonable inference to be drawn from the "well-pleaded"

allegations of the complaint.  Retail Clerks Int'l Ass'n v.

Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  Thus, the plaintiff

need not necessarily plead a particular fact if that fact is a

reasonable inference from facts properly alleged.  See id.

Nevertheless, it is inappropriate to assume that the

plaintiff "can prove facts which it has not alleged or that the

defendants have violated the . . . laws in ways that have not

been alleged."  Associated Gen. Contractors of Calif., Inc. v.

Calif. State Council of Carpenters, 459 U.S. 519, 526 (1983).

Moreover, the court "need not assume the truth of legal

conclusions cast in the form of factual allegations."  United

States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th

Cir. 1986).

Ultimately, the court may not dismiss a complaint in which

the plaintiff has alleged "enough facts to state a claim to

relief that is plausible on its face."  Bell Atlantic Corp. v.

Twombly, 127 S.Ct. 1955, 1974 (2007).  Only where a plaintiff has

not "nudged [his or her] claims across the line from conceivable

to plausible," is the complaint properly dismissed.  Id.  "[A]

court may dismiss a complaint only if it is clear that no relief

could be granted under any set of facts that could be proved

4

consistent with the allegations." <u>Swierkiewicz v. Sorema N.A.</u>,
534 U.S. 506, 514 (2002) (quoting <u>Hudson v. King & Spalding</u>, 467
U.S. 69, 73 (1984)).

**ANALYSIS**

Defendants seek to dismiss at least some portion of each of
the seven claims brought by plaintiff.  First, defendants contend
that the civil damages portion of plaintiff's claim[4] for
violation of TILA should be dismissed because it is time barred.
Second, defendants seek to dismiss all of plaintiff's remaining
claims, which were all brought under state law, on the ground
that they are preempted by federal law.  Defendants also seek to
dismiss plaintiff's claims for breach of contract and breach of
the implied covenant of good faith and fair dealing for failing
to state a claim upon which relief can be granted.  Finally,
defendants seek to dismiss all claims brought against defendants
Lydian Trust Company and Virtual Bank.

**A.   Violation of TILA**

Defendants first argues that the civil damages portion of
plaintiff's TILA violation claim is time barred.  (Defs.' P. & A.
in Supp. of MTD ("MTD"), April 3, 2008, 5:23.)  Plaintiff argues
that the statutory period has not expired based on the continuing
violation doctrine and equitable tolling.  (Pl.'s Opp'n to MTD
("Opp'n"), filed May 8, 2008, 13:23-14:20.)

TILA provides that a plaintiff can bring an action to
recover damages "within one year from the date of the occurrence
of the violation."  15 U.S.C. § 1640(e).  The Ninth Circuit has

---

[4]    Plaintiff also seeks to rescind the loan agreement
pursuant to TILA.  (Pl.'s Compl. ¶ 76.)

5

1    expressly rejected the continuing violation theory as applied to

2    claims for damages brought under TILA, stating that the theory is

3    "unrealistically open ended" and "exposes the lender to a

4    prolonged and unforeseeable liability that Congress did not

5    intend." King v. State of California, 784 F.2d 910, 914 (9th

6    Cir. 1986).[5]

7         In King, however, the Ninth Circuit also held that equitable

8    tolling of civil damages claims brought under TILA might be

9    appropriate "in certain circumstances." Id. at 915.  In King,

10   the court noted that a borrower may not have a reasonable

11   opportunity within one year to discover the fraud or

12   nondisclosures that form the basis of a TILA action.  Id.

13   Moreover, the King court noted that, through TILA, Congress

14   "sought to protect consumer's choice through full disclosure and

15   to guard against the divergent and at times fraudulent practices

16   stemming from uninformed use of credit." Id.  Accordingly, the

17   Ninth Circuit explained that "district courts . . . can evaluate

18   specific claims of fraudulent concealment and equitable tolling

19   to determine if the general rule would be unjust or frustrate the

20   purpose of the Act and adjust the limitations period

21   accordingly." Id.

22   /////

23

24        [5]   Plaintiff attempts to circumvent King's rejection of
     the continuing violation doctrine by citing to the Supreme
25   Court's application of the continuing violation doctrine in
     Havens v Realty Corp. v. Coleman, 455 U.S. 363 (1982).  Havens,
26   however, involved violations of the Fair Housing Act based on
     "racial steering," not TILA violations based on improper
27   disclosures.  Havens, 455 U.S. at 366.  Moreover, plaintiff has
     not cited to any cases adopting the continuing violation theory
28   for claims brought under TILA after Havens.

1   When determining whether the statute of limitations has run

2   on a motion to dismiss, a court can only grant the motion "if the

3   assertions of the complaint, read with the required liberality,

4   would not permit the plaintiff to prove that the statute was

5   tolled." <u>Supermail Cargo, Inc. v. U.S.</u>, 68 F.3d 1204, 1206 (9th

6   Cir. 1995).  The applicability of equitable tolling often depends

7   on matters outside the pleadings.  <u>Id.</u> (citing <u>Cervantes v. City</u>

8   <u>of San Diego</u>, 5 F.3d 1273, 1276 (9th Cir. 1993)).  As such, it

9   "is not generally amenable to resolution on a Rule 12(b)(6)

10  motion." <u>Id.</u>

11      In this case, defendants contend, and plaintiff does not

12  dispute, that the alleged TILA violations occurred no later than

13  October 25, 2006, the date plaintiff entered into the loan

14  agreement with defendants.  (MTD 6:2-3.)  Accordingly, since

15  plaintiff did not bring his claim until January 11, 2008, more

16  than one year has passed since the alleged TILA violation.

17      However, plaintiff has sufficiently alleged that equitable

18  tolling may apply to his TILA violation claim.  Plaintiff's

19  allegations are primarily based on defendants' alleged failure to

20  clearly and conspicuously disclose various terms of the loan.

21  (Pl.'s Compl. ¶¶ 63-74.)  By their nature, these allegations make

22  it plausible that defendants could not have discovered the TILA

23  violations within one year, even through the use of due

24  diligence.  This situation could result in unjust enforcement of

25  the statutory period.  As the Ninth Circuit directed in <u>King</u>,

26  further factual findings will be necessary to determine whether

27  or not equitable tolling is proper.  Therefore, defendants'

28  /////

motion to dismiss plaintiff's claim for civil damages based on violation of TILA is denied.

**B.    UCL Claims**

Defendants next contend that plaintiff's UCL claims are preempted by the Home Owners' Loan Act of 1933 ("HOLA"). Plaintiff asserts that his state law claims are exempt from preemption.

The UCL forbids acts of unfair competition, which includes "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.  "The UCL is broad in scope, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." People ex rel. Gallegos v. Pacific Lumber Co., 158 Cal. App. 4th 950, 959 (2008) (internal citations omitted).

HOLA was enacted in 1933 in order to "restore public confidence by creating a *nationwide system* of federal savings and loan associations to be centrally regulated according to *nationwide* best practices." Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1004 (9th Cir. 2008) (citing Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 160-161 (1982)) (emphasis added).  Congress' intent in enacting HOLA was "to charter savings associations under federal law" because, at the time, "record numbers of home loans were in default and a staggering number of state-chartered savings associations were insolvent." Id. (citing Bank of Am. v. City and County of S.F., 309 F.3d 551, 559 (9th Cir. 2002).

Through HOLA, Congress gave the Office of Thrift Supervision ("OTS") authority to issue regulations governing thrifts.  Id.;

8

12 U.S.C. § 1464.  With this authority, the OTS promulgated 12 C.F.R. § 560.2, a preemption regulation[6], with the purpose of occupying the "*entire field* of lending regulation for federal savings associations."  12 C.F.R. § 560.2(a) (emphasis added). Through the preemption regulation, the OTS sought to "enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices." Id.  Additionally, the regulation was intended to "give federal savings associations maximum flexibility to exercise their lending powers in accordance with a *uniform federal scheme of regulation*."  Id. (emphasis added).

Section 560.2(b) provides a list of "illustrative examples" of the types of state laws that are preempted.  This includes state laws purporting to impose requirements regarding:

> "(4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
>
> (5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;
>
> . . .
>
> (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants
>
> . . ."

12 C.F.R. § 560.2(b)

---

[6]   Federal regulations have no less preemptive effect than federal statutes.  de la Cuesta, 458 U.S. at 153.

1    Lastly, § 560.2(c) provides a list of state laws that are
2  not preempted "to the extent they only incidentally affect . . .
3  lending operations . . . or are otherwise consistent with the
4  purposes of paragraph (a) of this section."  12 C.F.R. §
5  560.2(c).  These laws include contract and commercial law, real
6  property law and tort law.  Id.

7    The OTS has outlined an analysis, which has been adopted by
8  the Ninth Circuit, to determine whether a specific state law is
9  preempted under § 560.2.  Silvas, 514 F.3d at 1005.  The first
10  inquiry of this analysis is "whether the type of law in question
11  is listed in paragraph (b)."  Id.; OTS Opinion Letter at 11 (March
12  10, 1999).  If the type of law in question is listed in paragraph
13  (b), "the analysis will end there; the law is preempted."  Id.
14  If the law is not covered by paragraph (b), the next question is
15  whether the law affects lending.  Id.  If the law does affect
16  lending, there is a presumption that the law is preempted.  Id.
17  "This presumption can be reversed only if the law can clearly be
18  shown to fit within the confines of paragraph (c)."  Id.
19  Paragraph (c) is to be interpreted narrowly, with any doubt
20  resolved in favor of preemption.  Id.

21    In Silvas, the Ninth Circuit applied this analysis and held
22  that two claims brought under the UCL challenging a lock-in fee
23  relating to a loan were preempted.  Id. at 1006.  The first claim
24  was brought under the false advertising section of the UCL and
25  alleged that a false statement regarding the lock-in fee was made
26  on the defendants' website and customer disclosures.  Id. at
27  1003.  The second claim also challenged the lock-in fee but was
28  brought under the unfair competition section of the UCL.  Id.

The court held that, as applied, the plaintiff's UCL claims implicated both § 560.2(b)(5) and § 560.2(b)(9) since a lock-in fee is a loan-related fee, and because the claims were based on defendants' disclosure and advertising practices.  Id. at 1006. Accordingly, both claims were preempted.  Id.

In this case, three of plaintiff's seven claims are founded upon alleged violations of the UCL: the first is based on violations of TILA, the second is based on "unfair" or "fraudulent" business acts or practices, and the third is based on violations of California Financial Code § 22302.  (Pl.'s Compl. ¶¶ 18, 20, 28.)

**1.    UCL claim based on unfair or fraudulent business acts or practices.**

Plaintiff alleges that defendants violated the UCL through the use of "unfair" or "fraudulent" business acts or practices. This claim arises out of defendants' alleged failure to disclose, inter alia, that negative amortization would occur and that plaintiff's interest rates would increase substantially after 30 days.  (Pl.'s Compl. ¶¶ 95, 96.)

Plaintiff's claim fits within § 560.2(b)(9) since the claim involves whether disclosure of certain terms of credit was proper.  These disclosures were made in the Note itself, which is both a credit contract and a credit-related document as described in § 560.2(b)(9).  Any decision in plaintiff's favor would place substantive requirements on defendants regarding the disclosures to be included in credit contracts and other credit-related documents.  Such substantive state law requirements would directly contradict the letter and purpose of HOLA and § 560.2.

11

1  See Prince-Servance v. BankUnited, FSB, No. 07 C 1259, 2007 WL

2  3254432 at *5 (N.D. Ill. 2007) (stating that "hodgepodge of state

3  regulations is exactly what OTS was attempting to prevent through

4  preemption").

5      The facts in this case are analogous to the facts that were

6  before the Ninth Circuit in Silvas.  In Silvas, the court held

7  that the plaintiffs' claim for unfair business practices was

8  preempted because the alleged violation was based on

9  misrepresentation of the lock-in fee in advertising and

10  disclosure documents.  Silvas, 514 F.2d at 1006.  In this case,

11  defendant's alleged violation is also based upon improper

12  disclosures that relate to the terms of credit in the Note.  As

13  such, in both Silvas and in this case, plaintiff is attacking

14  disclosures falling within the purview of § 560.2(b)(9).

15  Therefore, as in Silvas, plaintiffs UCL claim for fraudulent or

16  unfair business practices or acts is preempted.[7]

17      Plaintiff contends that his UCL claim is not preempted

18  because it arises from a state law of "general application".

19  (Opp'n 3:16-19.)  Plaintiff relies primarily upon the Central

20  District of California's opinion in Reyes v. Downey Savings and

21  Loan Ass'n, which held that a UCL claim based on unfair or

22  fraudulent business practices, founded on facts very similar to

23  the facts here, was not preempted by HOLA.  Reyes v. Downey

24  Savings and Loan Ass'n, F.A., 541 F. Supp. 2d 1108, 1114 (C.D.

25  Cal. 2008).  The court in Reyes stated that none of the types of

26

27      [7]   To the extent plaintiff claims that the terms of credit
28  themselves are unfair, such claims fit squarely within the terms
    § 560.2(b)(4).  See infra, Part B.3.

laws listed in § 560.2(b) were implicated by the UCL claim.
Reyes, 541 F. Supp. 2d at 1114.  The court reasoned that the §
560.2(b) laws "are examples of very specific laws, narrowly
tailored to the lending industry."  Id.  The court also stated
that the plaintiffs sought "to use the UCL to apply general
principles of contract law" and that "application of these
principles would require no affirmative action or type of
representation by a lending institution."  Id. at 1115.

However, in Silvas, the Ninth Circuit did not base its
holding on whether the UCL was being used to apply general
principles of a law or whether application of the UCL would
require affirmative action or representation by the defendants.
Instead, the court in Silvas concluded that the plaintiffs' UCL
claims, as applied, were preempted because they were based on a
loan-related fee, as well as the disclosure and advertising of
the loan-related fee.  Silvas, 514 F.2d at 1006.  Accordingly,
this court declines to follow the rationale set forth in Reyes
regarding preemption of UCL claims based upon unfair or
fraudulent business acts or practices.[8]

In a similar circumstance, the Northern District of Illinois
determined that claims brought under Illinois' unfair competition

---

[8]     This court also declines to follow Mandrigues v. World
Savings, Inc., where the court held that UCL claims similar to
plaintiff's claim here were not preempted.  Mandrigues v. World
Savings, Inc., No. C 07-04497 JF, 2008 WL 1701948, at *3 (N.D.
Cal. 2008).  In its analysis, the court in Mandrigues never
discussed whether any of the types of laws listed in paragraph
(b) were implicated.  Id. at *2-3.  Instead, the court determined
preemption was not proper based on an analysis of paragraph (c).
Id.  By doing so, the court did not apply the analysis proffered
by the Ninth Circuit in Silvas, which provides that "the first
step will be to determine whether the type of law in question is
listed in paragraph (b)."  Silvas, 514 F.3d at 1005.

statue challenging a loan-related fee and its disclosure were
preempted by HOLA.  Prince-Servance, 2007 WL 3254432 at *5.  In
Prince-Servance, the plaintiff argued that § 560.2 only preempted
laws specifically intended to regulate lending activity of a
federal savings association.  Id.  The court disagreed, stating
that the plaintiff presented the issue "too broadly.  Id.
Rather, the court held that "[i]t is clear from the language of
[§ 560.2] and subsequent caselaw that to the extent a generally
applicable law interferes with a federal savings association's
lending activity it is preempted."  Id.

Based on the Ninth Circuit's ruling in Silvas and the effect
that application of the UCL will have on defendants' lending
practices, plaintiff's claim in this case for violation of the
UCL based on unfair or fraudulent business acts or practices is
preempted by HOLA.  Therefore, defendant's motion to dismiss
plaintiff's claim for violation of the UCL for unfair or
fraudulent business acts or practices is GRANTED.

### 2.   UCL claim based on violation of TILA

Plaintiff has also alleged a UCL violation by defendants
based on defendants' violation of TILA.  Plaintiff's claim for
violation of TILA is primarily based on a failure to properly
disclose and represent the true interest rate of the loan and
that negative amortization was certain to occur, as required by
TILA.  (Pl.'s Compl. ¶¶ 63-74.)   Plaintiff's UCL claim based on
violation of TILA incorporates these same alleged violations.
(Id. ¶ 77.)

Similar to plaintiff's UCL claim based on unfair or
fraudulent business acts or practices, this claim also implicates

14

§ 560.2(b)(9) since its application would purport to impose requirements on the types of disclosures made by defendants. Accordingly, for the same reason that plaintiff's UCL claim based on unfair or fraudulent business practices is preempted by federal law, plaintiff's UCL claim based on violation of TILA is also preempted.

Moreover, plaintiff's UCL claim based on violation of TILA is also preempted by federal law since its application would supplement TILA by changing TILA's framework. "When federal law preempts a field, it leaves 'no room for the States to supplement it.'" Silvas, 514 F.3d at 1007 n.3 (citing Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)). "When an entire field is preempted, a state may not add a damages remedy unavailable under the federal law." Id. (citing Pub. Util. Dist. No. 1 of Grays Harbor County Washington v. IDA-CORP, Inc., 379 F.2d 641, 648-49 (9th Cir. 2004)). Furthermore, "[a]n attempt by Appellants to go outside the congressionally enacted limitation period of TILA is an attempt to enforce a state regulation in an area expressly preempted by federal law." Id.[9]

By predicating a UCL claim on a violation of TILA, plaintiff is attempting to alter both the damages available under TILA and the statute of limitations period for civil damages under TILA. Compare 15 U.S.C. § 1640 (in class actions, damages limited to $500,000 or one percent of the net worth of the creditor; one year statute of limitations for civil damages) with Cal. Bus and Prof. Code §§ 17203, 17204, 17206, 17206.1, 17207, 17208

---

[9]   While the Silvas court's discussion of the issue is dicta, the court, nevertheless, finds it persuasive.

(defendants subject to injunction, payment of restitution and civil penalties; four year statute of limitations).  Since plaintiff is using state law to supplement TILA though his UCL claim, the claim is preempted.  <u>See</u> <u>Reyes</u>, 541 F. Supp. at 1115 (UCL claim predicated on violations of TILA preempted by federal law).  Therefore, defendants' motion to dismiss plaintiff's UCL claim predicated on violation of TILA is GRANTED.

### 3.   UCL claim based on violation of California Financial Code § 22302

Plaintiff's final UCL claim alleges that defendant violated the UCL by violating California Financial Code § 22302.  As with the other two UCL claims, defendant contends that this UCL claim is preempted by HOLA.  Plaintiff does not address this argument in his opposition.

Section 22302 of the California Financial Code provides that "[a] loan found to be unconscionable pursuant to § 1670.5 of the Civil Code shall be deemed to be in violation of this division and subject to the remedies specified in this division."  Cal. Fin. Code § 22302(b).  California Civil Code § 1670.5 states that if a contract is unconscionable, a court may refuse to enforce the contract, may enforce the remainder of the contract without the unconscionable clause, or may limit the application of any unconscionable clause to avoid an unconscionable result.  Cal. Civ. Code. § 1670.5.[10]

/////

--------

[10]   The text of California Civil Code § 1670.5 does not define "unconscionable."  Instead, the legislative comments provide examples of unconscionable agreements.

Plaintiff has alleged that the loan agreement he entered into with defendants was unconscionable for several reasons. Among these reasons was that defendants improperly disclosed pertinent information regarding the terms of the loan, and that the teaser rate and the prepayment penalty were each unlawful. (Pl.'s Compl. ¶¶ 146-148.)

Section 560.2(b)(4) specifically lists adjustments to interest rates as terms of credit.  Furthermore, the prepayment penalty in the Note is a loan-related fee under § 560.2(b)(5). As such, adjudication of plaintiff's UCL claim based on violation of California Financial Code § 22302 will require the court determine whether at least one term of credit and a loan related fee are unconscionable.  Any decision in plaintiff's favor would place substantive requirements on the terms of credit and loan-related fees that defendants would be required to offer to borrowers.  As a result, this court would necessarily be imposing requirements on the terms of credit and loan-related fees offered by defendants.  This implicates both § 560.2(b)(4) and (5).  As such, plaintiff's UCL claim based on a violation of California Financial Code § 22302 is preempted by HOLA, and defendants' motion to dismiss this claim is GRANTED.

**C.  Fraudulent omission**

Defendants also seek to dismiss plaintiff's claim for fraudulent omission on the ground that it is preempted by federal law.  (MTD 13:13.)  In response, plaintiff presents his same argument that the claim should not be preempted because fraudulent omission is a state law of general applicability being /////

17

1  applied to enforce the rights of contracting parties.  (Opp'n

2  6:20-22.)

3       The gravamen of plaintiff's fraudulent omission claim is

4  that *pursuant to TILA*, defendants had a duty to disclose to

5  plaintiff 1) the actual interest rate being charged; 2) that

6  negative amortization would occur and that the principal balance

7  would increase; and 3) that the initial rate on the Note was

8  discounted.  (Pl.'s Compl. ¶ 107.)  This inevitably implicates §§

9  560.2(b)(4) and (9) since defendants' alleged fraudulent omission

10 is based on the terms of credit of the loan and disclosure of

11 such terms.  It makes no difference that fraudulent omission and

12 the UCL come from different origins of law, as § 560.2 makes no

13 such distinction when addressing the types of laws that are

14 preempted.

15      Moreover, plaintiff is trying again to supplement TILA with

16 state law.  Plaintiff's fraudulent omission claim is based on a

17 duty defendants are alleged to be subject to under TILA.  (Pl.'s

18 Compl. ¶ 107.)  By basing defendants' common law duty on TILA,

19 plaintiff is attempting to alter both the damages available under

20 TILA and the statute of limitations period for civil damages

21 under TILA.  Compare 15 U.S.C. § 1640 with Cal. Civ. P. § 338

22 (three year statute of limitations on action for relief for

23 fraud; fraud claims in California do not appear to be subject to

24 statutory limits).  Accordingly, for the reasons set forth above,

25 plaintiff's claim for fraudulent omission is also preempted, and

26 defendants' motion to dismiss this claim is GRANTED.

27 /////

28 /////

**D.   Breach of Contract/Breach of Implied Covenant of Good Faith and Fair Dealing**

Defendants seek to dismiss plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing on two separate grounds: first, that the claims are preempted, and second, that plaintiff has failed with both claims to state a claim upon which relief can be granted.

**1.   Preemption**

Defendants again contend that plaintiff's state law claims for breach of contract and breach of the implied covenant of good faith and fair dealing are preempted by HOLA.  (MTD 18:19-22.) Plaintiff's again counter that each claim involves a law of general application that will be applied only to enforce the rights and obligations of contracting parties.  (Opp'n 6:20-22.)

As set forth above, the types of laws in § 560.2(b) are preempted to the extent that they purport to *impose requirements* regarding various types of lending activities.  12 C.F.R § 560.2(b) (emphasis added).  Plaintiff's UCL and fraudulent omission claims are illustrative; an adverse ruling by this court on those claims would, among other things, necessarily rule on the lawfulness of the disclosures made by defendants.  In contrast, plaintiff's breach of contract and breach of the implied covenant of good faith and fair dealing claims will not potentially impose any requirements for the type of lending activities described in § 560.2(b).  Instead, the court will determine whether parties to a contract have performed the obligations they made between themselves, and have done so in good faith and with fair dealing.  As such, a ruling against

defendants will not alter their lending practices, but only their practice of performing contracts.  Accordingly, plaintiff's breach of contract and breach of the implied covenant of good faith and fair dealing claims are not the types of laws expressly preempted under paragraph (b) since they do not have the effect of imposing requirements on defendants' lending practices.

Nor are breach of contract and breach of the implied covenant of good faith and fair dealing the types of state laws that more than incidentally affect on the lending practices of defendants under § 560.2(c).  Again, defendants' lending practices will not be affected whatsoever by these claims.  Instead, it is defendants' practices of performing contractual obligations with good faith and fair dealing that might be affected.  Therefore, plaintiff's breach of contract claim is not preempted by HOLA under § 560.2(b) or (c), and defendants' motion to dismiss each claim on preemption grounds is DENIED.

**2.   Failure to state a claim**

Defendants also contend that plaintiff has failed to state a claim upon which relief can be granted for both his breach of contract claim and breach of the implied covenant of good faith and fair dealing claim.  Plaintiff has alleged several ways in which defendants breached the terms of the Note.  Specifically, plaintiff alleges that defendants 1) failed to provide a low, fixed interest rate as promised; 2) failed to apply plaintiff's payments to both principal and interest; and 3) promised that negative amortization would occur only if plaintiff deviated from the payment schedule in the disclosure statement when, in fact, negative amortization was certain to occur.  (Pl.'s Compl. ¶¶

20

120-124.)  Plaintiff also alleges that the contract, as a whole, is unconscionable.  (Id. at ¶ 126.)  Defendants argue that the challenged conduct is permitted by the express terms of plaintiff's contract and, thus, plaintiff's claims are based purely on non-actionable, pre-contractual conduct.  (MTD 19:7-9.)

In California, "[a] cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach."  CDF Firefighters v. Maldonado, 158 Cal. App. 4th 1226, 1239 (2008).  "Resolution of contractual claims on a motion to dismiss is proper if the terms of the contract are unambiguous."  Monaco v. Bear Stearns Residential Mortgage Corp., -- F. Supp. 2d --, No. CV 07-05607 SJO (CTX), 2008 WL 867727, at *5 (C.D. Cal. 2008).  "A contract provision will be considered ambiguous when it is capable of two or more reasonable interpretations."  Id. (citing Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co., 855 P.2d 1263, 1271 (Cal.1993)).  "[T]he language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist."  Cal. Civ. Code § 1654.

Additionally, "[a] breach of the implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself."  Careau & Co. v. Security Pacific Business Credit, Inc., 222 Cal. App. 3d 1371, 1394 (1990).  A plaintiff must demonstrate a "conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints

/////

21

the reasonable expectations of the other party thereby depriving

that party of the benefits of the agreement."   Id.

Viewing the allegations of the complaint in the light most

favorable to plaintiff, the court holds that plaintiff has

sufficiently alleged that the terms of the contract were

ambiguous.  For example, paragraph 3 of the Note states that

plaintiff will make payments until plaintiff has paid "all the

*principal and interest* and any other charges described below"

owed under the Note.  (Pl.'s Compl., Ex. 1.)  Additionally,

paragraph 5 of the Note states that defendants will determine the

amount of monthly payment that would be sufficient to pay the

unpaid principal plaintiff owed when the monthly payments

changed.  (Id.)  These terms, when read in plaintiff's favor,

could support plaintiff's allegations that his monthly payments

were supposed to cover both the principal and interest owed on

the loans.  It could also support plaintiff's allegations that

the actual likelihood of negative amortization was different than

reflected in the Note.  Moreover, plaintiff also alleges that

defendant acted with "willful and wanton disregard" in performing

the contract, and that defendants' conduct was "malicious,

oppressive, and/or fraudulent." (Pl.'s Compl. ¶ 137.)  As such,

at this stage of the litigation, plaintiff has sufficiently

alleged that defendants breached the terms of the Note and also

breached the implied covenant of good faith and fair dealing.[11]

/////

_____

[11]   The court notes that it is not finding that the terms
of the Note are ambiguous as a matter of law.  Rather, at this
stage in the litigation, plaintiff has alleged sufficient facts
to survive a motion to dismiss.

22

1    Plaintiff has also alleged that defendants breached the Note
2    because the Note was unconscionable.  (Pl.'s Compl. ¶ 126.)  "The
3    doctrine of unconscionability has historically provided only a
4    defense to enforcement of a contract."  <u>California Grocers Assn.</u>
5    <u>v. Bank of Am.</u>, 22 Cal. App. 4th 205, 217 (1994).  California
6    Civil Code § 1670.5, which codifies the doctrine of
7    unconscionability, "does not in itself create an affirmative
8    cause of action but merely codifies the defense of
9    unconscionability."  <u>Id.</u>  As such, plaintiff's allegation that
10   defendants breached the Note because the Note was unconscionable
11   does not create a recognized claim under California law.

12       Accordingly, defendants' motion to dismiss plaintiff's
13   breach of contract claim is GRANTED to the extent it is based on
14   unconscionability.  Defendants' motion to dismiss plaintiff's
15   claims for breach of contract and breach of the implied covenant
16   of good faith and fair dealing based on all other grounds is
17   DENIED.

18   **F.   Claims Against Lydian Trust Company and Virtual Bank**

19       Defendants seek to dismiss all claims alleged against
20   defendant Lydian Trust Company for failing to adequately plead
21   that Lydian Trust Company was involved in any way with the loan
22   made to plaintiff.  On a motion to dismiss, courts "are not bound
23   to accept as true a legal conclusion couched as a factual
24   allegation.'"  <u>Twombly</u>, 127 S. Ct. at 1965 (citing <u>Papasan v.</u>
25   <u>Allain</u>, 478 U.S. 265, 286 (1986)).  "Conclusory allegations of
26   alter ego status will not survive a motion to dismiss."
27   <u>Maganallez v. Hilltop Lending Corp.</u>, 505 F. Supp. 2d 594, 607
28   (N.D. Cal. 2007).

23

1    In this case, the Note that is the subject of this action

2   does not list Lydian Trust Company as a party to the loan.

3   (Pl.'s Compl., Ex. 1.)  Rather, plaintiff has merely alleged that

4   "each of the defendants were the agent, servant, employer, joint

5   venturer, partner, division, owner, subsidiary, alias, assignee,

6   and/or alter ego of the other remaining defendants" and were

7   acting within the purpose or scope of such relationships.  (Id.

8   at ¶ 12.)  These allegations are conclusory and are not supported

9   by any other facts.  See Maganallez, 505 F. Supp. 2d at 607.  As

10  such, the complaint fails to sufficiently allege alter ego

11  liability against Lydian Trust Company, and the claims against

12  Lydian Trust Company are dismissed.

13   Defendants have also moved to dismiss all claims alleged

14  against defendant VirtualBank on the grounds that VirtualBank is

15  merely a division of Lydian Private Bank.  A division of a

16  corporation is not a separate entity but is the corporation

17  itself."  Maganallez, 505 F. Supp. 2d at 605.  Accordingly, it is

18  incapable of being sued or indicted separately.  See U.S. v. ITT

19  Blackburn Co., a Div. of ITT, 824 F.2d 628, 631 (8th Cir. 1987).

20   Plaintiff has alleged that VirtualBank if a division of

21  Lydian Private Bank.  (Pl.'s Compl. ¶ 8.)  The Note also states

22  that VirtualBank is a division of Lydian Private Bank.  (Id. at

23  Ex. 1.)  Since a division is incapable of being sued separately,

24  plaintiff has not sufficiently alleged his claims against

25  VirtualBank, and the claims alleged against VirtualBank will be

26  dismissed.  See Maganallez, 505 F. Supp. at 605.

27   Plaintiff has not requested leave to amend his complaint to

28  properly allege the liability of Lydian Bank Trust and

VirtualBank.  Nonetheless, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (citing Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995)).  The court is unable to find that the defects in alleging liability as to Lydian Bank Trust and VirtualBank are incurable.  Accordingly, plaintiff may amend his complaint to include further allegations to properly allege his claims against Lydian Bank Trust and VirtualBank.

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss is GRANTED in part and DENIED in part.  Specifically:

1.   Defendants' motion to dismiss plaintiff's first claim for violation of TILA is DENIED;

2.   Defendants' motion to dismiss plaintiff's second and third claims for violation of the UCL predicated on violation of TILA and unfair or fraudulent business acts or practices is GRANTED without leave to amend;

3.   Defendants' motion to dismiss plaintiff's fourth claim for fraudulent omission is GRANTED without leave to amend;

4.   Defendants' motion to dismiss plaintiff's fifth claim for breach of contract is GRANTED to the extent the breach is based on unconscionability.  As to the specific terms alleged to have been breached, the motion is DENIED;

/////

5.    Defendants' motion to dismiss plaintiff's sixth claim for breach of the implied covenant of good faith and fair dealing is DENIED; and

6.    Defendants' motion to dismiss plaintiff's seventh claim for violation of TILA predicated on violation of California Financial Code § 22302 is GRANTED without leave to amend.

Additionally, all claims brought against defendants VirtualBank and Lydian Trust Company are dismissed with leave to amend. Plaintiff is granted fifteen (15) days from the date of this order to file an amended complaint in accordance with this order. Defendants are granted thirty (30) days from the date of service of plaintiff's second amended complaint to file a response thereto.

IT IS SO ORDERED.

DATED: July 16, 2008

_____
FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE